Argued February 9, reversed and remanded March 3, 1977

## STATE OF OREGON, *Petitioner,*
*v.*
## CLAUDE LEON CONANT, *Respondent.*
### (CA 6074, SC 25014)
560 P2d 647

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for petitioner. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

[ 483 ]

Robert C. Cannon, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender.

Before Denecke, Chief Justice, and Holman, Tongue, Howell, Lent, Linde, and Bradshaw, Justices.

LINDE, J.

## LINDE, J.

The defendant, Claude Leon Conant, was indicted for manslaughter in the first degree for causing the death of his wife, Peggy Ann Conant. A jury convicted him of negligent homicide. On appeal, the Court of Appeals reversed, 27 Or App 25, 554 P2d 1027 (1976), finding error in two respects: First, the admission of hearsay evidence, and second, the trial court's refusal to give an instruction on the medical cause of death. We conclude that neither ground justified the reversal and remand to the Court of Appeals.

The following facts are relevant to the issues. Defendant was angry at his wife for failing to pay a debt with money he had given her for that purpose. On arriving home about 7:30 p.m. he began beating his wife, hitting her with his hands and pushing her into various objects in the kitchen. The couple's son testified that the altercation lasted more than 10 minutes, interrupted briefly when Mrs. Conant sought refuge in his room. Mrs. Conant then fled across a field toward a neighbor's house several hundred yards distant. On the way she slipped and fell into a drainage ditch. She arrived bruised and muddied, holding her stomach with one hand and complaining of pains. She spent the night with the neighbors, Mr. and Mrs. Beeman. The following morning she asked to be taken to a hospital, but she died en route. The cause of death was determined to be peritonitis resulting from perforation of the stomach.

The first issue arises from Mrs. Beeman's testimony about statements made to her by Mrs. Conant. The question is whether defendant made a proper and timely objection to this testimony.

After Mrs. Beeman described Mrs. Conant's arrival at the front door, the prosecutor asked:

"Q  Upon answering the particular door, what did Peggy Ann Conant do?

"A  She asked if Pat was there and myself. And Tom said, yes, she was. And then she came in —

[ 485 ]

"MR. FONDA: Objection, Your Honor. You're not going to be able to testify as to hearsay. Statements by other persons. The question was what did she do, what did she do. I object on the grounds of hearsay and ask that the answer be stricken.

"THE COURT: One minute. Let's find out who was present. Whether they were all in the hearing of each other before you start eliciting testimony."

Two pages later in the transcript the court stated:

"THE COURT: Just a minute. Your objection will be overruled. She was within earshot of all this conversation.

"MR. FONDA: Yes, Your Honor."

Somewhat later defense counsel made this objection to Mrs. Beeman's testimony:

"Q   Did she say how she got those bruises?
"A   Yes, sir, she did. She told me how —
"Q   What did she say?
"A   She —

"MR. FONDA: Objection, Your Honor. The witness may be allowed to testify what her words were but that's a conclusion which should be stricken.

"THE COURT: Yes. That conclusion of the witness will be stricken, ladies and gentlemen. That was an improper question to ask your witness now. Let's stay within the confines of the admissible testimony."

The testimony assigned as grounds for reversal occurred eitht pages later in the transcript:

"Q   Did she say how she got that pain?
"A   Yes. She told me that her husband beat her up.

"Q   Were those her exact words?
"A   No. Her exact words were, 'He beat me. He beat me real bad.' And I said, 'Who beat you?' And she said, 'My old man did.' "

■■ Though this last testimony clearly was hearsay, no defense objection was made at the time to the questions or the answers. Nor can defendant's original objection on hearsay grounds, quoted above, be extended to cover this later testimony. That is indeed the rule when an objection to the same class of testimony

has been made and erroneously overruled by the trial court, on the assumption that the court will adhere to the ruling. *Noteboom v. Savin,* 213 Or 583, 589, 322 P2d 916, 918, 326 P2d 772 (1958). But when the ruling on the prior objection is not adverse, defendant can hardly assume that objection to different testimony on a later occasion is either futile or unnecessary. In the absence of such an objection or motion to strike, there was nothing for the trial court to rule on. Nor was Mrs. Beeman's testimony concerning Mrs. Conant's statement so prejudicial that the court was obliged to strike it on its own motion.[1] It followed the description by the Conants' son of his father's beating and pushing his mother and other testimony describing the shambles in the kitchen. Failure to do so was not reversible error.

■ Defendant also assigns as error the trial court's failure to give the following proposed instruction:

"Ladies and Gentlemen of the jury I further instruct you that in order to convict the Defendant of * * * criminally negligent homicde [sic], you must find beyond a reasonable doubt that the defendant struck Peggy Ann Conant with his fists and pushed her causing her death by reason of acute, purulent peritonitis. In other words, the State must prove beyond a reasonable doubt a causal relationship between acts alleged to have been done by the Defendant and the death of Peggy Ann Conant."

---

[1] Indeed, defendant made a point of eliciting the same testimony on cross-examination:

"Q   It is very important that you remember her exact words as best you can. Do you understand that? * * *

\* \* \* \* \*

"Q   Now, as best as you can remember, what were her exact words in reply?

"A   Her words were, 'He beat me. He beat me real bad.'

\* \* \* \* \*

"Q   Her exact words?

"A   Yes, sir.

"Q   'He beat me He beat me real bad.'

"A   Yes sir."

Instead, the trial court gave this instruction:

" * * * Now in order to establish criminally negligent homicide, the State of Oregon must prove to you * * * fourthly, that the defendant caused Mrs. Conant's death by striking her with his fists and by pushing her as alleged in the Information."

Defendant argues that an instruction calling for a specific jury finding on peritonitis as the causal link between the beating and the death was required by *State v. Schwensen,* 237 Or 506, 392 P2d 328 (1964). But *Schwensen* does not call for an instruction on the medical details of causation in every case of death or injury. That was a prosecution for felony murder, on the theory that death occurred as a result of defendant's rape or attempted rape of decedent. The cause of death was a key issue. The prosecutor argued the possibility of death from an embolism resulting from a vein ruptured during the attack, or perhaps from asphyxiation or from shock, but he had introduced evidence only on the embolism hypothesis. The instruction actually given only required the jury to find that defendant "killed [decedent] while in the commission of or attempt to commit rape." Defendant requested an instruction that the state must prove "[t]hat the rape was the cause of the death of Jean R. Bussey by reason of an air embolism." The court held that it was error not to give this limiting instruction under the circumstances, because the prosecutor's arguments beyond the evidence left the key issue of causation open to speculation and conjecture. 237 Or at 525, 392 P2d at 337.

In the present case, the defense contention is not directed at holding the jury to the prosecution's evidence of peritonitis rather than some speculative cause of death. The medical cause, peritonitis, is not in dispute. Instead the defense argued that the state failed to prove that the peritonitis resulted from defendant's assault rather than, perhaps, from strik-

[ 488 ]

ing a pipe or other hard object when falling into the drainage ditch.[2] However, defendant's requested instruction was not phrased so as to focus the jury's attention on whether the assault caused the peritonitis. It focused on whether the assault caused Mrs. Conant's death, as did the instruction actually given, with peritonitis identified only as the medical cause of death. Failure to include the reference to peritonitis did not prejudice the issue of how this fatal condition was caused. It therefore was not reversible error.

Reversed and remanded.

---

[2]No arguments are presented whether this sequence of events would supply causation adequate for negligent homicide in any event.